11 GAUDIN, Judge.
This is an appeal by Jeffrey T. Norris, who sustained serious injuries in an altercation on November 24, 1988. Norris was fighting with Allen Guthrie when he was attacked by two of Guthrie’s friends.
A jury in the 24th Judicial District Court awarded $116,000.00 to Norris, finding Guthrie 70 per cent at fault. Guthrie’s friends, James Hollister and Arthur Kospelich, were found 30 per cent responsible (Hollister 20 per cent and Kospelich 10).
Found not negligent were defendants Stephen Cernnich and Danny & Clyde’s Food Store, Inc. Cernnich was another of Guthrie’s friends but he wasn’t involved in the fight. Danny & Clyde’s had sold beer to *979 Cernnich and possibly Guthrie before Guthrie’s encounter with Norris. At that time, Guthrie was 17 years of age while Cernnich was 18.
We affirm, being of the opinion that the jury’s determinations were supported by sufficient testimony and evidence.
Prior to trial, Norris settled with Guthrie for $90,000.00; nonetheless, the degree or extent of Guthrie’s negligence regarding Norris’ damages was properly before the jury during the three-day trial in March, 1993.
On appeal, Norris argues that the trial judge’s instructions to the jury were faulty and that both Cernnich and Danny & Clyde’s were negligent, or at least partially negligent. Also, Norris contends that his award was not ^adequate, due in part to the fact that the trial judge disallowed the testimony of his expert economist about lost earning capacity.
On the evening of the altercation, Guthrie, Cernnich and Kirk Sciacca, aged 16, decided about 7 p.m. to drive around in Cernnich’s automobile. They stopped first at Danny & Clyde’s store on Terry Parkway, where Cernnich said he purchased a six-pack of beer, which was consumed by the trio as they drove to and around New Orleans. They went to the French Quarter and drank “hurricanes” and they drove along the lake front.
At approximately 9:30 or 10 p.m., they returned to the West Bank and stopped again at Danny & Clyde’s, purchasing another six-pack of beer.
They then drove through their neighborhood looking for friends. Guthrie saw Tanya Rutledge, a former girlfriend, in her front yard with Norris, then 18-years of age and Rutledge’s date that night. Guthrie asked Cernnich to let him out of the car so he could speak with Rutledge. After Guthrie got out, Cernnich drove off, circling the block.
Rutledge went to speak with Guthrie and Norris followed her. Guthrie unexpectedly punched Norris in the head but Rutledge momentarily separated the two. Norris and Guthrie tangled again, wrestling to the ground. By the time Cernnich returned, Norris was on top of Guthrie and had him pinned down.
It was then that Hollister and Kospelich, who lived nearby, saw their friend Guthrie on the ground. They attacked Norris. Hollis-ter kicked Norris in the head at least once while Kospelich threw punches. Norris managed to crawl away and stagger into Rutledge’s house. Guthrie, Cernnich, Sciacca, Hollister, Kospelich and Rutledge all lived in the same neighborhood and attended the same school. Norris was an outsider. It appears, from the record, that Hollister, by kicking Norris in the head, inflicted the most severe physical | gharm to Norris although no doubt Guthrie’s actions triggered this unfortunate incident.
Until Hollister and Kospelich attacked him, Norris had not suffered any serious injury as a result of anything Guthrie had done.
While it appears that Hollister could have been found more than 20 per cent responsible, we have not been directly asked to reconsider this allotment of liability. Appellant has only asked that Cernnich and Danny & Clyde’s be found partially responsible and that his (Norris’) award be increased.
The jury, in its answers to written interrogatories, found Cernnich negligent but that his negligence was not a proximate cause of the plaintiffs injuries. Appellant argues that the jury did not understand what proximate cause was because the trial judge’s instructions were inadequate.
In any event, it is apparent from the testimony that when Guthrie first saw his ex girlfriend speaking with Norris, he asked Cernnich to stop the car and let him out. Guthrie was not upset and he did not do or say anything to suggest that he was angry or that he planned to attack Norris. Guthrie testified that when he got out of the automobile, his sole intention was to talk to Rutledge. Under these circumstances, Cernnich had no duty to restrain Guthrie, as contended by appellant. Guthrie resided approximately four to five houses from where Rutledge lived. They had stopped dating several months earlier.
*980 After Guthrie exited the auto, Cernnich drove off. He was circling the block when the altercation started. At no time did Cern-nich join in the fight.
Criminal charges were filed against Guthrie, Hollister and Kospelich[1] but not against Cernnich. Guthrie was not a violent person; in fact, he said that when he drinks he | Recomes happy not hostile. He testified that he had never been involved in any other fight before this one.
On appeal, Cernnich contends that the trial judge’s instructions, on proximate cause, on the duty owed by him and as a whole, fairly and reasonably provided the jurors with correct principles of law.
After the jurors retired and began deliberations, the foreman asked the trial judge for a further definition of proximate cause. The trial judge then advised the jury:
“Okay, I have conferred with all of the counsel and I am going to re-read to you a portion of the jury charges which I have previously read. As to the requirement that plaintiffs injury be caused by defendant’s conduct, I do not mean that the law recognizes only one cause of any injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors of things may operate at the same time, either independently or together, to cause injury or damage. When an accident results from two acts of negligence, one more remote and one intervening cause, the presence of the intervening cause prevents liability on the one responsible for the more remote cause. You should resolve this question by deciding whether plaintiff would probably not have suffered the claimed injuries in the absence of defendant’s conduct. To be actionable negligence must be a cause in fact of an accident or injury. To be a cause in fact, the conduct of that defendant must be a substantial factor in bringing about or causing an accident or injury. If plaintiff probably would have suffered those injuries, regardless of what the defendants did, then you must conclude that the injuries were not caused by the defendants and render a verdict for that defendant. If, on the Rother hand, plaintiff probably would not have suffered the claimed injuries in the absence of defendant’s conduct, then you must conclude that defendant’s conduct did play a part in plaintiffs injury, and you must proceed to the next element. If you find the defendant’s conduct was the cause in fact of plaintiffs injuries, you must then determine whether defendant’s conduct was within the scope of the risk created by the defendant’s conduct. Put another way, you must determine whether the duty which defendant breached was designed to prevent the type of harm that actually occurred. If you find that the duty was designed to protect the plaintiff from some other harm, or that the duty- was designed to protect some other potential victim, then you must find that plaintiffs injuries were not within the scope of the risk of defendant’s duty, and you must find that the defendant’s conduct was not the legal cause of plaintiffs injuries. In summary, in order to find the defendant’s conduct substandard, you must find that as an ordinarily prudent person, under all the circumstances surrounding his conduct, the defendant should have reasonably foreseen that as a result of his conduct some such injury as the plaintiff suffered would occur, and you must find also that he failed to exercise reasonable care to avoid the injury. You may find it helpful to phrase your inquiry this way: How would an ordinarily prudent person have acted, or what precautions would he have taken, if faced with similar conditions or circumstances? Okay?”
This wording, apparently, was agreed on before the supplement instructions were read, actually read for the second time.
| elf and where jury instructions are misleading, a reviewing court must decide whether the jurors were so misled that justice did not prevail. See Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5 Cir.1983), writs denied at 434 So.2d 1097 (La.1983).
*981 In the instant case, the overall jury instructions here fairly well spell out Norris’ claims against Cernnieh and the other defendants. More importantly, regarding Cern-nich, the circumstances surrounding his involvement do not establish any actionable fault on his part, jury instructions notwithstanding. In finding Cernnieh negligent but not liable, the jury likely took note of the fact that it was Cernnich’s car the boys drove around in and that he (Cernnieh) purchased or assisted in the purchase of beer and probably other alcoholic beverages, at Danny & Clyde’s and elsewhere, along with Guthrie and Sciacea, both of whom were under 18 years of age and not legally able to make the purchases.
Allocation of fault is entirely factual and is reviewed under the clearly wrong standard. See Lee v. Missouri Pacific Railroad Co., 540 So.2d 287 (La.1989). The instant jury was not clearly wrong in finding Cernnieh guilty of some negligent acts but not responsible for the fight that resulted in Norris’ injuries.
Likewise, any negligent acts by an employee of Danny & Clyde’s was not a contributing cause of Norris’ damages. Assuming that Guthrie and not Cernnieh actually purchased the beer at Danny & Clyde’s[2] and that the store cashier did not ask Guthrie for proof of his age, this conceivable negligence was remote from and not a legal cause in fact of the fight. Guthrie attacked Norris because he was angry and jealous. Hollister, who inflicted the most damage, had had nothing to drink.
The jury was presented with a form asking them to answer two questions regarding each defendant. First, was that ^particular defendant negligent; second, was any negligence a proximate cause of Norris’ injuries. The jury found Danny & Clyde’s not negligent, evidently being satisfied that Cernnieh and not either of the slightly younger boys he was with had purchased the six-packs.
From the jury’s response to the interrogatories, it seems clear that they understood this case and the possible negligence of each defendant. The assigning of 70 per cent fault to Guthrie, 20 per cent to Hollister and 10 per cent to Kospelich was supported by considerable testimony and evidence, as were the findings regarding Cernnieh and Danny & Clyde’s. There was evidence that in over 14 years, only one complaint had been lodged against Danny & Clyde’s for selling beer to a person under the legal age.
In summary, this was not a case of beer being sold illegally to a 17-year-old causing the teenager to attack another young man. This was a case of a 17-year-old becoming enraged and jealous because a former girlfriend was in the company of another teenager.
We affirm in toto the jury’s determinations and the subsequent judgment signed on May 18, 1993, with Norris to bear costs of this appeal. As Norris has settled with Guthrie and because Hollister and Kospelich are allegedly insolvent, Norris’ contention that the award should be increased is of no moment.
AFFIRMED.

. All three were convicted of or pled guilty to battery charges.

. There is some dispute about this in the record.