660 So.2d 524 (1995)
KING OF HEARTS, INC., Plaintiff-Appellant
v.
WAL-MART STORES, INC., et al., Defendants-Appellees.
No. 27137-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*525 Michael A. Courteau, Monroe, for appellant.
John C. Turnage, Shreveport and Nanci Summersgill, Monroe, for appellees.
Before MARVIN, SEXTON and STEWART, JJ.
STEWART, Judge.
King of Hearts, Inc. filed suit against various defendants, including its landlord, the landlord's roofing contractor, the City of Monroe (City), and a neighboring, store, Wal-Mart, Inc., for damages arising from rainwater flooding and sewage back-up following several heavy rainstorms between 1989 and 1991. King of Hearts ultimately settled its claims against all but the City and Wal-Mart. After King of Hearts' presentation of its case-in-chief, Wal-Mart moved for a directed verdict and the City moved for an involuntary dismissal. The trial court granted both motions. King of Hearts appeals and we affirm.

Facts
King of Hearts, Inc., owned by Stephen and Suzanne Courteau, is a tuxedo rental business with a store located in the Mid-City Center building in Monroe, Louisiana. The business operates out of property owned by Wilbur Marvin and managed by Commercial Properties Development Corporation (CPDC), from whom the Courteaus leased their space. King of Hearts is situated next to property leased by Wal-Mart, Inc.
On May 4, 1989, Monroe was inundated with eleven inches of rain. At 11:00 p.m. *526 that night, several King of Hearts employees noticed a liquid substance seeping into the store from a back wall. When employees attempted to find the source of the effluent, they discovered that it was coming from the Wal-Mart premises. Upon opening a Wal-Mart door fastened with a make-shift lock, the employees found water gushing out. Approximately twelve to eighteen inches stood on the ground. Feces floated in the water. The fecal matter flowed from one toilet in Wal-Mart where sewage gushed an estimated fifteen to eighteen inches above the toilet bowl. The effluent surged up from the floor drains instead of draining. As a result of the surging effluent, approximately 10,000 of the 12,000 square feet in King of Hearts was covered with between one and four inches of liquid.
The police called Eugene Benson, a Wal-Mart store manager, that night because the door near King of Hearts was open. Benson investigated and saw the effluent flowing from the bathroom. Before leaving the site, he wired the door shut.
On May 12, 1990, and again on April 28, 1991, King of Hearts suffered similar problems with flooding, resulting in damage to property, merchandise, and records to varying degrees. On each occasion, Monroe experienced record rainfalls.
During the course of pre-trial investigation, it was discovered that Duchesne Roofing was hired by CPDC to do repair work on the roof of the building. Apparently, the roof collected too much rainwater. In attempting to remedy the situation, Duchesne cut off a sewer vent pipe and converted it to a water drain.
Subsequently, King of Hearts filed suit against various defendants, including Wilbur Marvin, who owned the building, Wal-Mart, Inc., Duchesne Roofing, the City of Monroe, and CPDC. King of Hearts settled with all defendants except Wal-Mart and the City of Monroe.
King of Hearts called several fact witnesses during its case-in-chief, including Eugene Benson and Stephen Courteau. Three expert witnesses also testified: John Maroney, Mark Thomey, and Kirk Rosenhan.
John Maroney was called by the plaintiff as an adverse witness. He qualified as an expert in the field of civil engineering, encompassing expertise in the field of sewer design, construction, and operation. In preparing to testify, he tested the sewer system around the leased premises to determine whether rain water had infiltrated the sanitary sewer system. The results showed no infiltration. Furthermore, he discovered through research that none of the surrounding buildings had flooded on the occasions at issue. Thus Maroney opined that the commode flooding was caused by the conversion of the sewer drain to a flood drain. Moreover, the fact that only one commode was overflowingthe one closest to the converted vent pipesignified that the effluence was coming out of the nearest location so that the water on the roof could spill out.
Maroney's investigation of the site also revealed that a sewer line in the King of Hearts parking lot was broken. However, the sewer line does not become part of the City's sewer line until it reaches the six inch line out in the City right of way. Thus, the lines found in a building or parking lot belong to the owner thereof. Maroney opined that if, in fact, the line was broken under the parking lot at the time of the heavy rains, the defect would have greatly contributed to the back-flow of sewage into the Wal-Mart commode.
Mark Thomey, an expert in the field of civil engineering, established that it goes against all principles of engineering to merge a sewer system with a sanitary water system. He testified that the flooding at issue was caused by the combination of heavy rains and the fact that the sewer vent pipe had been tied into the flood drain on the roof.
Kirk Rosenhan, accepted as an expert in the field of mechanical engineering, sub-specializing in fluid mechanics, testified that the presence of raw sewage in the effluent indicated that the City's sewage system was full and had begun to backflow. However, he testified that sewage from the City's sewage system alone could not have caused the flooding. Rather, Rosenhan considered the problem to have stemmed from the infiltration of rainwater into the sewage system because a *527 flood drain had been constructed out of what had been a sewer vent pipe. Hence, Rosenhan admitted that but for someone's tampering with the vent pipe, the flooding would not have occurred.
Following King of Hearts' case-in-chief, Wal-Mart moved for a directed verdict and the City of Monroe moved for an involuntary dismissal. Both were granted. The trial court stated that King of Hearts did not offer evidence sufficient to show by a preponderance that either defendant was negligent or strictly liable for the damages sustained. King of Hearts appeals, arguing that the trial court erred in granting the directed verdict and involuntary dismissal.

Discussion

Directed Verdict
A motion for a directed verdict is a procedural device available in trials by jury with an eye toward judicial economy. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant, that reasonable jurors could not have arrived at a contrary conclusion. L.C.C.P. Art. 1810; Whitaker v. Mullinax, 628 So.2d 222 (La. App. 2d Cir.1993); Adams v. Travelers Ins. Co., 589 So.2d 605 (La.App. 2d Cir.1991); Moore v. Aetna Cas. and Sur. Co., 454 So.2d 1273 (La.App. 2d Cir.1984). If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Adams v. Travelers Ins. Co., supra; Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir.1979).
King of Hearts asserts that it proved Wal-Mart liable under theories of negligence and/or strict liability. Pursuant to its negligence theory, King of Hearts was required to prove that Wal-Mart breached a duty it owed to protect King of Hearts' premises from water damage caused by toilet overflow from a Wal-Mart toilet and that Wal-Mart's actions were a substantial cause-in-fact of the damage. King of Hearts theorizes that the cause-in-fact of the damage was Benson's negligence in knowing about but ignoring the drainage problem, and that had Benson not wired the door shut, the flooding would not have occurred.
The expert testimony overwhelmingly supports the notion that the cause of the flooding and subsequent damage was the conversion of the sewer vent pipe to a flood drain. That maladjustment was done by employees of Duchesne Roofing. Duchesne Roofing was hired by the owner of the building. Wal-Mart had no role in the conversion. Furthermore, King of Hearts failed to present any evidence that the flooding would have been prevented or mitigated had Benson allowed the water to freely flow. In fact, the testimony established that the door remained open during subsequent heavy rainstorms, yet King of Hearts flooded anyway. The record simply does not support King of Hearts' contention that Wal-Mart, through Benson, was negligent.
Similarly, King of Hearts has failed to present sufficient evidence of strict liability under Civil Code articles 2317 and 667. Article 2317 requires proof of custody, defect, and that the damage was caused by that defect. Villaronga v. Gelpi Partnership No. 3, 536 So.2d 1307 (La.App. 5 Cir.1988); Loescher v. Parr, 324 So.2d 441 (La.1975). King of Hearts has shown that Wal-Mart had custody of the offending commode. However, it has failed to demonstrate the presence of a viable defect. By brief, King of Hearts suggests that the sewage was the defect causing the damage. The jurisprudence has clearly established that a "defect" for purposes of strict liability is defined as an imperfection which is more or less permanently attached to or incorporated into the thing. Villaronga v. Gelpi Partnership No. 3, supra; Toussant v. Guice, 414 So.2d 850 (La.App. 4 Cir.1982). Sewage does not meet the definition requirements of "defect." The record, therefore, does not support a finding of article 2317 strict liability.
By the same token, King of Hearts has failed to offer proof of liability under *528 article 667. L.C.C. Art. 667 establishes a limitation on the owner's use of his property and provides that
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
Legal fault for purposes of liability under this article is defined as the damage done to neighboring property. Butler v. Baber, 529 So.2d 374 (La.1988); Villaronga v. Gelpi Partnership No. 3, supra. To show entitlement to relief, one need only show proof of damage and causation. Villaronga v. Gelpi Partnership No. 3, supra.
Once again, we find that the evidence shows that Wal-Mart's actions were not the cause-in-fact of damage. Additionally, the flood water caused the damage not any work made by the proprietor on his estate. Cf. Villaronga v. Gelpi Partnership No. 3, supra. For these reasons, we find that article 667 is not applicable to this case and even if it were, the record does not support King of Hearts' contention that Wal-Mart was cause-in-fact of the damage.

Involuntary Dismissal
Akin to the directed verdict, a motion for involuntary dismissal is allowed at the close of the plaintiff's evidence in a bench trial. The movant requests dismissal of the action as to him on the ground that, based on the facts and law, the plaintiff has failed to show a right to relief. L.C.C.P. Art. 1672(B); Brouillette v. Ducote, 93-990 (La.App. 3d Cir. 03/02/94), 634 So.2d 1243. However, unlike that which is required in evaluating the propriety of a motion for directed verdict, the judge reviewing a motion for involuntary dismissal must evaluate all the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988); Caldwell v. Texas Industries, Inc., 419 So.2d 86 (La.App. 2d Cir.1982).
King of Hearts argues that it proved the City to be liable in the instant case because of defective storm drainage systems. We do not agree.
The evidence showed that the City has separate systems for sewerage and storm drainage. Sometimes, according to the expert testimony of John Maroney, the sanitary sewer system is infiltrated by storm water. He agreed that infiltration indicates a defect in the system. King of Hearts, therefore, blames the presence of sewerage in the building on excessive infiltration of storm water into the sanitary sewer system. However, all three experts called by King of Hearts considered the tampered-with sewer vent to be the cause of a build-up of pressure which sucked water from the sewer pipes back into the premises. Nobody testified that the City's sewer system was the cause-in-fact of the flooding. Although Rosenhan attempted to cast some of the blame on the city system, he ultimately agreed that the flooding would not have occurred but for the problem with the sewer vent. Moreover, even if the sewers were full to the point of overflowing, expert testimony indicated that overflow would have caused similar flooding in other buildings. King of Hearts failed to present any evidence that the sewer and storm water systems were filled to capacity, that other buildings in the area had flooded, or that the sewerage in the overflow was from the City of Monroe's system. Therefore, we find that the trial judge did not abuse his discretion in granting the motion for involuntary dismissal

Conclusion
In sum, we hold that the trial court did not abuse its discretion when it granted motions for directed verdict and involuntary dismissal against King of Hearts and in favor of Wal-Mart and the City of Monroe, respectively. The ruling of the trial court is affirmed. Costs of the appeal are charged to the appellant.
AFFIRMED.