CARAWAY, J.
hThe plaintiff in this personal injury action sustained serious burns to the front of his body in an accident after three hours of drinking and horseplay with two friends. One friend, a 19-year-old, attempted to throw gasoline onto a bonfire and accidentally doused the nearby plaintiff who was set on fire. Plaintiff sued his friends and the convenience store which twice sold beer to the underage friend on the evening in question. After the presentation at trial of the plaintiffs case against the store and its owners, the trial court granted judgment in favor of these defendants dismissing all of plaintiffs claims against them with prejudice. This appeal by the plaintiff ensued. For the following reasons, we affirm.

Facts

On January 8, 2009, 26-year-old Ryan Brodnax and 19-year-old Zachary Nolan worked together a full day cutting firewood from residential property in Bastrop, Louisiana. After completing their work at approximately 5:30 p.m., .the two planned to go to the home of '40-year-old Jeff *430 Foster where the group was going to burn residual scrap from the trees which Foster had retrieved from the cutting site. Before Brodnax and Nolan arrived at Foster’s, they purchased beer at Super Mart II (“Super Mart”), a Bastrop gas station and convenience store, owned and operated by AK. Brothers, Inc. (“AK Brothers”). Nolan allegedly drove his vehicle in which Brodnax was a passenger. The two went through the Super Mart drive-thru window where Nolan allegedly purchased a 12-pack of beer with money the 12two planned to share from the earlier tree work. Thereafter the men traveled to Foster’s house.
In the meantime, Foster was working on building a fire in his backyard. He initially used diesel to get the green wood to burn, but began pouring gasoline on the fire to keep it going. For approximately three hours, the three men drank alcohol and visited. Foster had his own alcohol and Brodnax and Nolan drank the beer they had purchased earlier. None of the men could recall the exact amount of beer each consumed, although Nolan admitted that he drank between 8 and 13 beers. Nolan described his condition as “buzzing,” but not drunk. Brodnax admitted that he drank about 4 beers from the first 12-pack. During their time together, the men engaged in horseplay that included pouring lines of gasoline in the grass and setting them on fire. Later, Nolan and Foster made a second beer run to Super Mart. Foster contended that Nolan again drove his own vehicle to purchase more beer. Nolan could not remember who drove.
The timing of the event is unclear, but all of the men agreed that at some point a small gas can the three were using ignited.[1] When it caught fire, Brodnax kicked the can in the direction of Foster. The burning can caught Foster’s clothes and the grass near a shed on fire. Foster was able to get the fire out quickly and was not injured.
In a separate event, after Nolan and Foster returned from the second beer run, Nolan began throwing gas on the fire from a larger metal gasoline |scontainer in an attempt to stoke the fire. Brodnax recalled that he was approximately four feet from the fire and Nolan was closer to it. Nolan testified that he was uphill from Brodnax, but on the same side of the fire with Brodnax when he attempted to throw gasoline on the fire. As he did so, however, the spout of the larger can spewed Brodnax with gas and the fire ignited. Brodnax suffered serious injuries as the result of the accident with 13% of his body on the front side receiving second and third degree burns. He was rushed to a local hospital immediately after the event and transported to the Louisiana State University Medical Center burn unit in Shreveport for further treatment. Brod-nax received two skin grafts, was confined to a wheelchair for a month and wore a burn suit 23 hours a day for one year. He received occupational therapy and consulted a plastic surgeon for residual scarring.
Brodnax instituted a personal injury suit against Nolan, Foster and their insurers. AK Brothers and its individual owners, Hardial Kang (“Kang”), Bhupinder Aulakh (“B. Aulakh”) and Laddie Aulakh, were also named as defendants. In relevant part, Brodnax alleged that AK Brothers and its individual owners were liable for his injuries because they sold alcohol to the tortfeasor, Nolan, who was under the age of 21. Brodnax also alleged that the *431 Aulakhs and Kang knowingly and intentionally sold alcohol to underage purchasers, made it company policy to do so, failed to check for valid identification, train, supervise or monitor employees, follow state law and exhibited a reckless disregard for the safety of others.
|4Upon Brodnax’s motion, the trial court granted partial summary judgments on the issues of medical causation and duty, finding that as a matter of law AK Brothers had “a duty to not sell alcoholic beverages to persons under 21” and that in violation of that duty AK Brothers sold alcoholic beverages to Nolan. Laddie Aulakh was also dismissed from the action by summary judgment. On March 31, 2011, Brodnax dismissed all claims against Nolan, Foster and their insurers. Thus, at trial, the only remaining issue was the liability of AK Brothers, and two of its owners, Kang and B. Aulakh.
After the presentation of the plaintiffs case, the defendants moved for a directed verdict[2] which the trial court granted, dismissing the claims against AK Brothers, Kang and B. Aulakh. In oral reasons for judgment, the trial court concluded that it was Nolan who first drove himself and Brodnax to the Super Mart to buy beer and that Nolan drove Foster back to the Super Mart for the second beer run. The court considered that “the beer would have been purchased [by Brod-nax] regardless if Mr. Nolan bought it under age” and that “Mr. Nolan [was] not a minor” so “we’re not talking about serving beer to a 16-year old.” Further the court determined that there was no evidence of impairment when the sales were made. Going further however, the court ultimately concluded that it was not “foreseeable” that 19-, 26- and 40-year-old men would “go off and engage in this type of | ⅞horseplay and that it would cause the injuries that Mr. Brodnax sustained,” and that the facts were “not within the scope of the duty that they [defendants] have.” The court also refused to address the issue of the personal liability of Kang and Au-lakh “because there’s no testimony, no evidence that they engaged in any type of written policy or tacit policy or any other type policy to engage in the sale of alcoholic beverages to minors.” Thus, the court dismissed all of plaintiffs claims. This appeal by Brodnax ensued.

Discussion

On appeal, Brodnax argues that the trial court erred in concluding that sales of alcohol would have been made anyway to the older men with Nolan in the truck. Nevertheless, since we view the trial court’s ruling (including the prior partial summary judgment) as having at least assumed that AK Brothers breached its duty in making the sales, we pretermit the trial court’s handling of that issue and address the trial court’s conclusion that the risk Brodnax encountered was not within the scope of the duty owed by defendants. Brodnax asserts that this issue of legal cause is subject to the appellate court’s de novo review.
Akin to the directed verdict, a motion for involuntary dismissal is allowed at the close of the plaintiffs evidence in a bench trial. The movant requests dismiss *432 al of the action on the grounds that, based on the facts and law, the plaintiff has failed to show a right to relief. La. C.C.P. art. 1672(B); King of Hearts, Inc. v. Wal-Mart Stores, Inc., 27,137 (La.App.2d Cir.8/23/95), 660 So.2d 524; Brouillette v. Ducote, 93-990 (La.App. 3d Cir.3/02/94), 634 So.2d 1243. The appropriate standard for the trial court’s determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. Clifton v. Coleman, 32,612 (La.App.2d Cir.12/23/99), 748 So.2d 1263, writ denied, 00-0201 (La.3/24/00), 758 So.2d 151; Darton v. Kroger Co., 30,711 (La.App.2d Cir.8/25/98), 716 So.2d 974; Vig v. City of Shreveport, 28,530 (La.App.2d Cir.8/21/96), 679 So.2d 524, writ denied, 96-2285 (La.11/15/96), 682 So.2d 775.
A dismissal based on Article 1672(B) should not be reversed in the absence of manifest error or unless clearly wrong. Clifton, supra. On the other hand, while factual determinations by the trier of fact are given great deference on appeal, if the trial court’s decision was based on an erroneous application of law, rather than a valid exercise of discretion, the trial court’s decision is not entitled to the deference it would otherwise enjoy. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); Clifton, supra; We Sell Used Cars, Inc. v. United Nat’l Ins. Co., 30,671 (La.App.2d Cir.6/24/98), 715 So.2d 656.
The applicable standard of review is the manifestly erroneous or clearly wrong standard. To reverse a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Brewer v. J.B. Hunt Transp., Inc., 09-1408 (La.3/16/10), 35 So.3d 230, citing, Stobart v. State Through Dep’t. of Transp. and Dev., 617 So.2d 880 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Brewer, supra. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
The liability of a vendor of alcoholic beverages who sells or serves alcohol to a person under the legal drinking age is determined under La. C.C. arts. 2315 and 2316 using the traditional duty/risk analysis on a case-by-case basis, rather than under La. R.S. 9:2800.1, which grants immunity for damages arising from the sale of alcohol to persons over the age of 21. Berg v. Zummo, 00-1699 (La.4/25/01), 786 So.2d 708. Under the duty/risk analysis, the vendor has the duty to refrain from selling or serving alcohol to a minor, and if the other requirements of breach of duty, causation and damages are proven, the vendor will be liable for damages. Id.
The duty/risk analysis consists of the following four-prong inquiry: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendants) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? Rando v. Anco Insulations Inc., 08-1163 (La.5/22/09), 16 So.3d 1065; Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318. Under a duty/risk analysis, all four inquiries Rmust be affirmatively *433 answered for plaintiff to recover. As such, in order for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements, namely the duty element, the breach of duty element, the cause-in-fact element, the scope of liability or scope of protection element and the damages element. Rando, supra; Davis v. Witt, 02-3102 (La.7/2/03), 851 So.2d 1119.
Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Rando, supra; Roberts v. Benoit, 605 So.2d 1032 (La.1991). The scope of protection inquiry asks whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner. Rando, supra. This legal determination depends on factual determinations of foreseeability and ease of association. Rando, supra; Perkins v. Entergy Corp., 98-2081 (La.App. 1st Cir.12/28/99), 756 So.2d 388, affirmed, 00-1372 (La.3/23/01), 782 So.2d 606.
A risk may not be within the scope of a duty where the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. Rando, supra; Todd v. State Through Dept. of Social Services, 96-3090 (La.9/9/97), 699 So.2d 35; Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). The extent of protection owed by a defendant to a plaintiff is made on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. Rando, supra; Todd, supra. Ease of association asks, how easily does one associate the plaintiffs complained-of harm with the defendant’s conduct? Roberts, supra.
With minor inconsistencies in the sequence of events leading up to Brodnax’s injuries, the three men testified consistently, reporting the events around the bonfire as stated above. Brodnax added that when Nolan left for the second trip to Super Mart, he was visibly intoxicated. Also, when the gasoline ignited on him, Brodnax estimated that Nolan was two feet from the blaze.
Nolan explained that as he threw the gas on the fire, the safety cap splashed gas onto Brodnax who was downhill from him. Nolan stated that the drinking of alcohol “had effect of us starting to play with gas a little bit,” but he testified that even sober, “if we was playing with gas, it would’ve been the same way.” The testimony also indicated that the men had previously conducted similar outdoor fires with the misuse of gasoline.
Brodnax’s fianceé testified that when she arrived at the scene prior to the second beer run, she spoke with Nolan who was “slurring his words really bad.”[3] She went inside Foster’s house for 30-40 minutes before she informed Brodnax she was ready to go home. As she moved toward her car, she heard “Hey Ryan.” She turned around to see that Nolan “had thrown the gas,” and that “Ryan was nothing but flames.” She stated that Nolan and Brodnax were on different sides of the fire.
| inEvidence relating to other sales of alcohol to minors at Super Mart was also *434 introduced at trial. The two individuals who worked the evening of the accident did not recall if they sold alcohol to Nolan. Those employees, and a third employee who testified, stated that they knew they were required to check identification and were never instructed or encouraged to sell alcohol to underage individuals. Kang, the president of AK Brothers, testified that it was the store’s mandatory practice that employees ask for identification.[4]
In 1986, Louisiana raised the minimum drinking age from 18 to 21 in response to the National Minimum Drinking Age Act passed by Congress and set forth in 23 U.S.C. § 158. The federal law requires states to impose a minimum drinking age of 21 for the purchase or public consumption of alcoholic beverages in order to remain eligible to receive full federal highway funding. The initial Louisiana legislation contained no sanctions applicable to retailers or sellers of alcoholic beverages because the federal law contained no such requirement. Nevertheless, in 1995, the Louisiana Legislature added provisions imposing sanctions on retailers for selling alcoholic beverages to those between 18 and 21. See discussion in Manuel v. State, 95-2189 (La.3/8/96), 692 So.2d 320, which originally held that the increase in the drinking age violated equal protection, but upheld the legislative action on rehearing. In Manuel, the court noted that the | ^‘governmental objective at issue is improving highway safety,” through statutes which addressed the problem of “youthful drinking and driving.”
In Berg v. Zummo, supra, the court faced a suit by an injured pedestrian against the bar that sold alcohol to a minor. The minor had been served alcohol by the bar without any check of his identification. The intoxicated minor left the bar along with several companions and immediately in the nearby area had battered and run over the plaintiff with the defendant’s truck. In affirming the jury verdict which imposed liability on the bar, the court made the following statements regarding the public policy underlying the prohibited sale of alcohol to underage individuals:
Legislation has been enacted specifically pertaining to the sale of alcohol to minors, and although those statutes impose criminal, rather than civil responsibility, they serve as guidelines for the determination of an alcoholic beverage vendor’s duty to refrain from selling or serving alcohol to minors. It further evidences the public policy of this state to prohibit the sale of alcohol to minors and to protect minors and the general public from the effect of a minor’s intoxication, particularly when the minor is operating an automobile.
Id. at 715.
The court concluded that “the vendor of alcoholic beverages has a duty to refrain from selling or serving alcohol to minors” and that the bar which served alcohol to the 17-year-old breached that duty. The court also determined that the jury was not manifestly erroneous in finding that serving of alcohol to the minor was a cause in fact of the injures suffered by the pedestrian. Finally, the court determined that “the risk that a minor who is served alcohol might become intoxicated and get into a fight and injure someone with his car” was clearly within the scope of the duty to refrain | i2from serving alcohol to the minor and was not a manifestly erroneous determination by the jury.
*435 In Norris v. Guthrie, 93-962 (La.App. 5th Cir.8/1/94), 641 So.2d 978, writ denied, 94-2253 (La.11/18/94), 646 So.2d 382, the appellate court addressed the liability of a store from which an underage passenger in a vehicle bought beer which he consumed and later battered an individual. On the evening of the accident, three friends decided to drive around. The defendant was not the driver of the vehicle. On two separate occasions during the evening, the individuals purchased a six-pack of beer from the same convenience store and drank the beer while driving around. It was speculated that the defendant participated in these purchases. The men also went to the French Quarter where they drank “hurricanes” before driving around the lake front. At some point in the evening, the defendant saw his ex-girlfriend in her front yard with her date. The defendant asked the driver to let him out of the car so he could speak with his ex-girlfriend. The driver and other passenger continued to drive around. The defendant punched his ex-girlfriend’s date and a fight ensued. Two other young men who were not in the car saw the defendant on the ground and came to his aid. One of these young men kicked the plaintiff in the head.
The plaintiff sued both the driver of the vehicle and the convenience store in the tort suit along with the individuals involved in the fight. The jury exonerated the driver and convenience store, but allocated fault to other individuals involved in the altercation. The plaintiff appealed. In affirming the jury verdict as to the convenience store, the court stated:
| [.¡Likewise any negligent acts by an employee of [the convenience store] was not a contributing cause of [the plaintiffs] damages. Assuming that [the defendant] and not [the driver] actually purchased the beer at [the convenience store] and that the store cashier did not ask [the defendant] for proof of his age, this conceivable negligence was remote from and not a legal cause in fact of the fight. [The defendant] attacked [the victim] because he was angry and jealous.
In the language of Rando, supra, the trial court by considering the policy of our law made “a legal determination” which was also dependent “on factual determinations of foreseeability and ease of association.” Id. at 1088. The trial court concluded that the risk of the gasoline-infused bonfire which injured the plaintiff was not within the scope of the duty of AK Brothers not to sell alcohol to Nolan. This was a mixed question of law and fact which the trial court weighed. The trial court’s conclusion must be manifestly erroneous for an appellate court reversal, and the de novo standard of review asserted by appellant is not applicable.
A primary policy underlying the duty of the alcohol vendor is to prevent the societal risk of the impaired driving of underage persons. Importantly, however, a violation of that policy in this case was not a cause of the accident. Instead, there were two intervening factors. The trial court weighed the facts concerning the other adults’ responsibility for Nolan’s drinking. Brodnax and Foster were obviously aware of the younger Nolan’s inebriated state. Their decisions were to not discourage his conduct, but to participate with him in what Brodnax now asserts as Nolan’s misuse of alcohol. The second intervening factor was the participants’ choice to mix gasoline with the fire. This use of gasoline on that evening was not a one-time accidental occurrence with a sudden ignition that surprised the | ^participants. There was a continuous pattern of horseplay lighting the gasoline on and around the bonfire, and those actions had occurred for some time before *436 the final fire consumed Brodnax. The trial court could consider the timing and the facts of the prior accident with the smaller gasoline can which caused Foster’s clothing to catch on fire. The court could reasonably conclude that the prior event should have served as an immediate warning that the recklessness of the men’s actions must end.
Under the manifest error standard we find that the trial court’s measure of legal cause or the scope of liability for AK Brothers’ duty was reasonable. The foreseeability of the unusual and reckless conduct of all the participants with the gasoline around the fire was remote in its association with the breach of AK Brothers’ duty regarding the sale of alcohol in this case.

Conclusion

For the foregoing reasons, the judgment of the trial court granting an involuntary dismissal of all of plaintiffs claims against AK Brothers and Kang and B. Aulakh is affirmed. Costs of this appeal are assessed to Brodnax.
AFFIRMED.

. Foster testified that the two events occurred very close in time. Brodnax recalled that the small can incident occurred before the second beer run. Nolan could not remember much about the incident.

. A directed verdict is appropriate only in a jury trial. Because this case was tried by a judge only, the appropriate method of dismissal was involuntary dismissal. Nevertheless, that error is one of form rather than substance, as the ultimate object of both motions is the same. Gillmer v. Parish Sterling Stuckey, 09-0901 (La.App. 1st Cir. 12/23/09), 30 So.3d 782; Broussard v. Voorhies, 06-2306 (La.App. 1st Cir.9/19/07), 970 So.2d 1038, writ denied, 07-2052 (La.12/14/07), 970 So.2d 535. See also, Heath v. McCarthy, 41,853 (La.App.2d Cir. 1/24/07), 948 So.2d 363, writ denied, 07-0358 (La.3/30/07), 953 So.2d 69.

. Through his deposition testimony introduced into evidence, Dr. Thomas Arnold, expert in toxicology, estimated that Nolan’s blood alcohol would have been approximately .182 at the time of the incident. In the doctor’s opinion, this level of impairment would have affected Nolan's coordination, reaction time and judgment and would have been a significant factor in causing the accident.

. Two young men testified that they bought beer from Super Mart when they were under the age of 21 without being asked for identification. Nolan also testified that he purchased beer from Super Mart on occasion before the night of the incident.