LOLLEY, J.
| ] This appeal arises from the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, which granted summary judgment in favor of the Bossier Parish Sherriffs Office and Detective Debra McKay, finding that discretionary immunity provided by La. R.S. 9:2798.1 applied under these circumstances. The State of Louisiana through the Department of Children and Family Services now appeals that judgment. For the following reasons, we affirm the judgment of the trial court.
FACTS
This matter stems from the tragic death of five-year-old Anna Celeste Lowe, born June 13, 2005, to biological father, Wesley Lowe, and biological mother, Jamie Mercer. At the end of 2010, Anna was living in Bossier Parish, Louisiana, with Wesley *1237 and her stepmother, Catherine Lowe, due to a pending investigation in Ouachita Parish against Jamie for the alleged physical and sexual abuse of Anna.
Around September 24, 2010, Wesley took Anna to a doctor for a bruise on her forehead. Wesley informed the doctor that Jamie punched Anna in the head, and also reported suspected sexual abuse. Subsequently, Anna was evaluated at the Center for Children and Families in Monroe, Louisiana. On September 29, Wesley filed in Bossier Parish District Court for a protective order against Jamie on Anna’s behalf. According to the protective order, Jamie was allowed only supervised visits with Anna while the investigation was ongoing. The last visit Jamie had with Anna was on October 30, 2010, at the Louisiana State Fair in'Shreveport.
On December 9, 2010, a teacher at Elm Grove Elementary School in Bossier Parish reported suspected physical abuse of Anna to the Bossier 1 ¿Parish Sherriff s Office (“BPSO”). Specifically, the teacher reported a bruise on Anna’s neck, which Anna claimed had been caused by her mother. An investigation was opened and assigned to Bossier Parish Detective Debra McKay, who contacted Wesley to inquire about Anna’s bruise. Detective McKay had knowledge of the pending investigation in Ouachita Parish involving Jamie. After learning from Wesley that Anna had not returned to Jamie’s custody since October 2010, Det. McKay closed the investigation in Bossier Parish concerning the December 2010 bruise on Anna’s neck.
About a month later, on January 13, 2011, at around 9:30 in the morning, Anna was brought to the Willis-Knighton Pier-remont Emergency Room in Shreveport where she was pronounced dead. At the time, Wesley and Catherine claimed that Anna had a stomach virus, but the coroner’s report revealed Anna’s stomach was severed from her intestines—the recorded cause of death was internal injuries and bleeding due to blunt force trauma. Subsequently, it was learned that Catherine was physically abusing Anna. Catherine was indicted for first degree murder by a grand jury, but eventually accepted a plea deal, and pled guilty to manslaughter in connection with Anna’s death.
On January 11,2012, Jamie, individually, and on behalf of her deceased daughter, filed survival and wrongful death actions against defendants: Wesley; Catherine; the State of Louisiana, Department of Family and Child Services (“DCFS”); Ta-meika Monday, DCFS employee; BPSO; Det. McKay; the Attorney General for the State of Louisiana; and, the Louisiana Office of Risk Management. Jamie later voluntarily dismissed the Attorney General and Office of Risk Management. BPSO and Det. McKay filed a motion for summary judgment. DCFS filed an opposition | ¡¡arguing it was grossly negligent for Det. McKay to close her investigation when evidence of continued abuse existed. Jamie filed an opposition also, but only to the extent that if summary judgment were granted in favor of BPSO and Det. McKay, no evidence of allocation of fault as to BPSO or Det. McKay should be considered at a trial of the matter.
After a hearing on the joint motion, the trial court granted summary judgment in favor of BPSO and Det. McKay. DCFS alone now appeals that ruling. Jamie, Wesley, and Catherine have not filed briefs in this appeal.
DISCUSSION
In its only assignment of error, DCFS argues the trial court erred in granting summary judgment in favor of BPSO and Det. McKay. Specifically, it argues the trial court erred in finding Det. McKay’s actions during the investigation of Anna’s December 2010 braise were not grossly negligent and thus entitled to dis *1238 cretionary immunity in accordance with La. R.S. 9:2798.1. We disagree with DCPS’s argument.
A de novo standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court uses the same criteria that governed the trial court’s determination of whether summary judgment was appropriate. Bank of N.Y. Mellon v. Smith, 2015-0530 (La. 10/14/15), 180 So.3d 1238, 1243. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. |4966(A)(3). The burden of proof rests with the mover. Nevertheless, if the mover will not bear, the burden of proof at trial on the issue that is before the court on the motion for summary judg^ ment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La. C.C.P. art. 966(D)(1).
When the court grants a motion for summary judgment that a party or non-party is not negligent, is not at fault, or did not cause in whole or in part the injury or harm alleged, that party or non-party shall not be considered in any subsequent allocation of fault, and evidence shall not be admitted at trial to establish the fault of that party or non-party. La. C.C.P. art. 966(G).
Normally, liability is judged under the traditional duty-risk analysis; however, where statutory immunity from liability applies, the necessity of a duty-risk analysis of a public entity’s actions is not reached. See Fowler v. Roberts, 556 So.2d 1 (La. 1989); see also Brodnax v. Foster, 47,079 (La.App. 2 Cir. 04/11/12), 92 So.3d 427, 432, writ denied, 2012-1074 (La. 09/12/12), 98 So.3d 310. Where a public entity exercises its policymaking or discretionary duties, immunity applies in the absence of gross negligence. See Anderson v. Anderson, 2007-805 (La.App. 5 Cir. 02/06/08), 980 So.2d 15, writ denied, 2008-0558 (La. 05/02/08), 979 So.2d 1285. The Louisiana Supreme Court has adopted the .United States Supreme Court’s two-step inquiry set forth in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), to analyze the application of immunity under La. R.S. 9:2798.1. Simeon v. Doe, 618 So.2d 848, 852-3 (La. 1993); Peterson v. City of Tallulah, 43,197 (La.App. 2 Cir. 04/23/08), 981 So.2d 192, 195. First, a court must determine whether a statute, regulation or policy specifically prescribes the course of action for the employee or agency to follow. Id. If so, there is no discretion on the part of the employee or agency and therefore no,immunity. Id. If a court determines discretion is involved, the court must then determine whether that discretion “is the kind which is shielded by the exception, that is, one grounded in social, economic or political policy.” Fowler, supra at 15.
Gross negligence, has been defined as the want of even slight care and diligence; the want of diligence which even careless men are accustomed to exercise; the entire absence of care; utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others; the extreme departure from ordinary care; or, the want of even scant care. See Ambrose v. New Orleans Police Dep’t Ambulance Serv., 93-3099 (La. 07/05/94), 639 So.2d 216, 219-20. Gross negligence, therefore, *1239 has a well-defined legal meaning distinctly separate, and different, from ordinary negligence. Id.
Louisiana R.S. 9:2798.1 states, in pertinent part:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
| fiThus, although BPSO and its employees may be entitled to the qualified immunity set forth in La. R.S. 9:2798.1, there is no such immunity if gross negligence can be proved to negate entitlement to discretionary immunity. Therefore, the issue presented in this matter is whether Det. McKay’s actions were a willful, outrageous, and extreme departure from ordinary diligence under these circumstances.
Oliveaux v. St. Francis Med. Ctr., 39,-147 (La.App. 2 Cir. 12/15/04), 889 So.2d 1264, writ denied, 2005-0454 (La. 04/29/05), 901 So.2d 1067, involved an investigation by Ouachita Parish DCFS (then Child Protection Services or CPS) with facts similar to the instant matter. In Oliveaux, the plaintiff, father of a deceased child, brought wrongful death and survival actions against the hospital and DCFS. In November 1993, the child was brought to the hospital by her mother’s boyfriend, who claimed a chest of drawers had fallen on the child, causing a swollen scalp. A CT scan revealed three skull fractures and a subdural hematoma which prompted the doctor to call a social worker, who, in turn, contacted DCFS to conduct an interview. It was unclear which party was negligent in properly conveying the severity of the child’s injuries, but either the social worker failed to report the severity of the injuries to DCFS, or DCFS failed to record the information during intake, resulting in the case receiving a designation of Level III priority for unspecified physical abuse rather than a “high priority” designation.
During the six days in which the child remained in the hospital, the DCFS caseworker and a West Monroe police detective conducted interviews of the present family members. The child’s maternal grandparents, who sometimes cared for the child, appeared irritated with their daughter’s 17boyfriend and stated that they did not believe the story about the chest of drawers, but no formal accusation of abuse was ever made. After six days in the hospital, the child was released to her mother’s custody. A month later, the child was brought to the hospital by ambulance, and pronounced dead upon arrival. The boyfriend claimed the child had drowned in the bathtub, but doctors noticed signs of trauma to the child’s anus and rectum indicating sexual abuse. The boyfriend was subsequently convicted of murder and sentenced to death. This Court affirmed the Oliveaux trial court’s conclusion that the DCFS caseworkers exercised discretion within the course and scope of their lawful powers and duties, entitling DCFS to discretionary immunity. Id. at 1272.
As in Oliveaux, supra, there is nothing in this record to show that Det. McKay was contacted by anyone asserting the injury and abuse to Anna was caused by anyone except Anna’s mother (which is assumed meant Jamie). No other formal accusations of abuse were made. Detective *1240 McKay’s affidavit stated that, after learning that Anna reported the bruise was caused by her mother, she contacted Wesley to inquire about the bruise, and was satisfied that Anna had not and would not be returned to Jamie until the Ouachita Parish investigation was completed.
No summary judgment evidence has been presented here to prove Det. McKay breached a specific protocol for a child abuse investigation. Her actions in the investigation of the December 2010 bruise on Anna’s neck were discretionary. According to Det. McKay’s affidavit, the only personal knowledge she had of any alleged abuse of Anna was the December 9, 2010, notification of the bruise on Anna’s neck. During her investigation of Anna’s bruise, Det. McKay became aware of the pending Isinvestigation concerning allegations against Jamie and her male roommate, which was being conducted in Ouachita Parish because Jamie lived in Monroe.
Considering that an ongoing investigation concerning allegations of abuse to Anna was being conducted in another parish, Det. McKay’s actions do not rise to a level of gross negligence. Although DCFS argues that Det. McKay should have investigated further or could have done things differently, one does not have the advantage of hindsight when making these discretionary decisions during an investigation,
Louisiana R.S. 9:2798.1 protects public entities from liability for discretionary decisions by providing immunity when performing “their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.” Fowler, supra at 20. When another state agency has an open investigation into a child abuse case, it is not grossly negligent for a detective to make a discretionary decision to close an investigation concerning an incident involving a single bruise. After reviewing the entire record and considering the summary judgment evidence, we find that BPSO and Det. McKay, as a matter of law, cannot be held liable for what was the exercise of a discretionary function entitled to statutory immunity in accordance with La. R.S. 9:2798.1. Thus, this assignment of error has no merit.
|3CONCLUSION
Considering the foregoing, we find the trial court did not err in granting summary judgment in favor of the Bossier Parish Sheriffs Office and Detective McKay. In accordance with La. R.S. 13:5112(A), costs of this appeal are assessed to appellant, the Department of Children and Family Services, in the amount of $3,296.80.
AFFIRMED.