Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,445-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

FELICIA WILSON CROW                    Plaintiff-Appellant

versus

JOHN T. CROW                           Defendant-Appellee

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 49,847

Honorable Glen Wade Strong, Judge

* * * * *

LAW OFFICES OF CHRIS L. BOWMAN        Counsel for Appellant
By: Chris L. Bowman

LAW OFFICES OF JIM NORRIS             Counsel for Appellee
By: Alan James "Jim" Norris

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**STONE, J.**

This case concerns a previously married couple, who executed a prenuptial agreement ("prenuptial agreement" or "prenup") that effectively extinguished Louisiana's community property regime. Felicia Wilson Crow ("Felicia") and John T. Crow ("John") were married in 2003 and lived together for nearly 20 years in Union Parish. Felicia filed a petition for divorce on May 27, 2021, wherein she challenged the enforceability of their prenup.

## FACTS

Felicia and John were to be married on July 25, 2003. Three days prior thereto, they separately executed their prenuptial agreement before a notary and two witnesses. The prenup expressly renounced all provisions of law that established a legal community of acquets and gains and was thereafter filed in the conveyance records of Union Parish that same day. Felicia filed for divorce on May 27, 2021, and asserted, for the first time, that the prenup was invalid. Specifically, Felicia alleges that she was not fully advised by her own legal counsel of the content and consequences of the agreement and that she signed the agreement under circumstances that caused her to be unduly influenced.

A bench trial on the validity of the prenuptial agreement was set for November 18, 2024.[1] Three days prior to trial, John filed a motion in limine

---

[1] A divorce was rendered in favor of John on July 28, 2022, effectively dissolving the marriage. During their divorce proceedings, the parties had a myriad of other post-marriage matters that were set (and heard) in addition to the issue at bar that included spousal and child support, custody, separation of property, restraining orders, etc. After a pretrial conference held on August 12, 2024, the trial court determined that the validity of the prenuptial agreement should be resolved prior to any partitioning of property.

to exclude evidence of error, fraud, or duress.  John also filed an exception of no right of action.  The trial court granted the motion in limine in part, disallowing evidence of fraud and duress — since those factors were not stated as an affirmative defense in the pleadings — but allowed evidence regarding error.[2]  The exception of no right of action was denied altogether, and the matter proceeded to trial.

Felicia testified that she knew about the prenuptial agreement about a month prior to its execution as it was John's idea to have the prenup.  She admits that she did not read it before signing it because she was not a legal expert and would not understand the legal terminology.  Felicia stated that she did not hire a lawyer to review the prenup, because she believed it merely preserved the assets she and John owned prior to their marriage as separate property while allowing them to live in a community property regime thereafter.  According to Felicia, on the day of signing the prenup, she was sent to the office of David Post, a local attorney who, unbeknownst to her, had done legal work for John and had business dealings with him.[3]  While there, he neither disclosed that he was John's lawyer nor reviewed the prenup with her, just notarized it.  She further testified that after the wedding, she and John operated in a community regime just as she understood, filing joint tax returns as proof thereof.[4]  John testified that the purpose of executing the prenup was to keep *everything* separate throughout

[2] Subsequently, this issue is not an assignment of error on appeal.

[3] David Post was John's real estate lawyer for over 15 years, and they own a company called 'P & C Rentals' dating back to 1995.

[4] John and Felicia filed joint tax returns throughout their marriage, where John would list income that he had from property that he maintained as his separate property in addition to their other income.  Thus, any income taxes due on the income tax return was a community obligation.

the marriage and alleged this sentiment was relayed to Felicia in their discussions about it. He admitted that he and David Post were business partners at the time he notarized Felicia's signature, and further testified that the prenup was actually prepared by his personal lawyer, Jack Laird.

Following the presentation of Felicia's evidence, John moved for a directed verdict on the grounds that the law and evidence afforded her no relief, as the prenup is an authentic act and Felicia's signature represents that she read it and agreed to its contents.[5] The trial court granted John's motion, finding that Felicia failed to meet her burden of demonstrating that something was done in some way to either persuade her to sign the prenup or prevent her from adequately understanding it. Additionally, the trial court, in its written reasons, noted that the prenup benefit Felicia in that it granted her ½ interest in the family home John purchased prior to their marriage.[6] The case was dismissed with prejudice at Felicia's cost, and it is from this judgment that she appeals.

## DISCUSSION

In her sole assignment of error, Felicia asserts that the trial court abused its discretion in granting John's motion for a directed verdict. She argues that the prenup was executed in error as she was not afforded ample time and opportunity to review the agreement with her own counsel, as she was placed in a vulnerable position just days before her wedding.

---

[5] John's counsel moved for a directed verdict, which may be granted in a jury trial under La. C.C.P. art. 1810, rather than for an involuntary dismissal under La. C.C.P. art. 1672(B), which may be granted in a bench trial. While it is a nominal use of an incorrect procedural vehicle, we consider such error to be one of form rather than substance, as the legal effect of either motion is the same.

[6] Felicia was still residing in the family home at the time of trial.

3

Furthermore, Felicia asserts that David Post was in direct violation of the rules of professional conduct by not disclosing his business interests with John and failing to advise her to seek counsel prior to signing the prenup. In response, John asserts that Felicia cannot claim to be uninformed about the contents of the prenup because she chose not to seek legal counsel to review it. Additionally, John alleges that his business relationship with David Post is irrelevant, as he acted *only* as a notary on the document.

### *Matrimonial Agreement*

The presumption is that parties are aware of the contents of writings to which they have affixed their signatures. The burden of proof is upon them to establish with reasonable certainty that they have been deceived. *Bagneris v. Oddo,* 2 Pelt. 278 (La. App. Orl. 1919). Here, Felicia readily admits that she did not read the prenuptial agreement before signing because she would not have comprehended the legal terminology contained in the agreement.

Subsection/Paragraph 1 of the prenuptial agreement reads as follows:

> The intended husband and wife hereby establish a regime of separation of property as allowed by Civil Code Article 2329. Accordingly, they expressly renounce all provisions of law which establish a legal community of acquets and gains between husband and wife, whether now or later enacted.

Subsection/Paragraph 2 of the prenuptial agreement reads as follows:

> All property of the intended husband and wife, whether owned at the time of the ceremony of marriage or acquired during the marriage, is declared to be separate property.

Although Felicia is not an attorney, the first two paragraphs of the prenup are straightforward as they include the simplest of laymen's language

pertaining to entering a separate property regime under Louisiana law. Felicia was not compelled by law to necessarily read the prenup; however, she is still held to the consequences as if she had done so. This court will not allow her to invalidate an authentic act/agreement that she signed by arguing ignorance on her part. The courts of our state have long held that "if a party can read, it behooves him to examine an instrument before signing it." *Snell v. Union Sawmill Co.,* 159 La. 604 at 608, 105 So. 728 at 730 (1925). If Felicia had taken a few seconds to read the first page, she would have fully understood the effects of the document she was signing. Remarkably, after reading the first line of the prenup while on the witness stand at trial, she indicated her understanding that it was a separation of the matrimonial regime and had no objection to its contents.

### *Notary as an Attorney*

Felicia's assertions that David Post, the notary who just happened to also be an attorney, had an obligation to advise her or talk her out of signing the prenuptial agreement is mere folly, as she did not actually hire him to represent her interests in this matter. The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. *Louisiana State Bar Ass'n v. Bosworth*, 481 So.2d 567, 571 (La. 1986). However, this subjective belief must be a reasonable one. *Watson v. Franklin*, 50,730 (La. App. 2 Cir. 6/22/16), 198 So. 3d 177. In this case, the only thing Felicia entrusted David Post to do was notarize her signature on the document — which he did. David Post neither persuaded Felicia to sign the prenup nor gave her any information regarding its contents. By Felicia's own testimony, she did not talk to him; he merely notarized her signature,

5

which demonstrates she expected nothing further from him. Objectively and subjectively, there was absolutely no attorney-client relationship between David Post and Felicia and thus, he had no duty to act as her counsel.

***Standard of Review***

Akin to the motion for a directed verdict, a motion for involuntary dismissal is allowed at the close of the plaintiff's evidence in a bench trial. The movant requests dismissal of the action on the grounds that, based on the facts and the law and that the plaintiff has failed to show a right to relief. La. C.C.P. art. 1672(B); *King of Hearts, Inc. v. Wal–Mart Stores, Inc.*, 27,137 (La. App. 2 Cir. 8/23/95), 660 So. 2d 524; *Brodnax v. Foster,* 47,079 (La. App. 2 Cir. 4/11/12), 92 So. 3d 427, *writ denied*, 2012-1074 (La. 9/12/12), 98 So. 3d 310. The appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. *Clifton v. Coleman*, 32,612 (La. App. 2 Cir. 12/23/99), 748 So. 2d 1263, *writ denied*, 2000-0201 (La. 3/24/00), 758 So. 2d 151. When a party fails to carry his burden of proof, there is no necessity for the opposing party to rebut insufficient evidence. *Humphrey v. Humphrey*, 614 So. 2d 837 (La. App. 2d Cir. 1993).

The applicable standard of review is manifest error. To reverse a factfinder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact, and (2) the court must further determine the record establishes the finding is clearly wrong. *Brewer v. J.B. Hunt Transp., Inc.*, 09–1408 (La.

6

3/16/10), 35 So. 3d 230. Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

We find that the trial court's conclusion in this case was reasonable. Felicia's attempts to invalidate her prenuptial agreement are baseless as she knew about its potential existence at least one month prior to its execution and is familiar with the process of procuring representation for important legal matters. She is college educated with extensive business experience prior to, during, and subsequent to her marriage to John where she has hired an attorney for business transactions. Moreover, Felicia was married and divorced prior to her relationship with John and was represented by legal counsel throughout that process. The record is devoid of any evidence that shows where Felicia and John altered the separate property regime they established by way of their prenuptial agreement. Filing joint taxes and/or acquiring property during a marriage does not automatically change or otherwise indicate a desire to convert from a separate property regime to a community property regime of acquets and gains.

According to Felicia, John did not threaten to call off the wedding (i.e., not marry her), if she refused to sign the prenup before their wedding. Furthermore, Louisiana law (as well as the prenuptial agreement itself) allows spouses to alter their prenuptial agreement prior to and during the

7

marriage.[7]  Again, had Felicia simply perused their agreement at *any* point during their nearly 20-year marriage, perhaps the divorce could have been more amicable.  The timing and basis of this suit lead us to believe that her motives are perhaps more vindictive in nature.

To reiterate, the prenup was signed by both parties with the presumption that the parties knew, understood, and *agreed* to the terms of the regime they were entering.  The law of Louisiana is that one who signs an instrument without reading it has no complaint.  *See, Ray v. McClain,* 106 La. 780, 31 So. 315 (1901).  Felicia's assertion that she is not bound by her own signature (prenuptial agreement) — because she did not read it — but signed it in ignorance of its substance and effects, is without merit.

## CONCLUSION

For the aforementioned reasons, the judgment of the trial court granting John's motion for a directed verdict is affirmed.  Costs are assessed to the appellant.

**AFFIRMED.  COSTS ASSESSED TO APPELLANT.**

---

[7] *See,* La. C.C. art. 2331.