Judgment rendered May 15, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,483-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CITY LIFE LIVE, L.L.C. and                   Plaintiffs-Appellants
MARCIA D. MEREDITH

versus

POST OFFICE EMPLOYEES                        Defendant-Appellee
FEDERAL CREDIT UNION

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 582,513

Honorable Michael A. Pitman, Judge

* * * * *

MARCIA D. MEREDITH                           In Proper Person/Agent,
                                             Appellants


TAYLOR, WELLONS, POLITZ,                     Counsel for Appellee
& DUHE, APLC
By: Travis Brendon Wilkinson


* * * * *

Before STONE, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

City Life Live, L.L.C. ("City Life") and Marcia Meredith appeal a judgment dismissing their claims for damages after the Post Office Employees Federal Credit Union ("credit union") placed an administrative freeze on their accounts, placed Meredith's loan in default, and accelerated repayment of the loan.

For the following reasons, we affirm the judgment and all post-judgment rulings.

## FACTS

Meredith, who described herself as a wealth asset manager with more than 20 years of experience in finance, started banking at the credit union in 1994 when she was 18. It was where she did her personal and business banking. Her account number at the credit union was 10126. There were four suffix accounts under that account number: 001, 015, 061, and 063.

In 2009, Meredith formed City Life, which provides a hotline for interested people to call concerning live events in a city. She is its manager and chief executive officer. Two accounts for City Life were opened at the credit union on July 3, 2013. The account numbers were 14715 and 14716, with the former used as an expense account and the latter used for payroll. Meredith was the joint owner of both accounts. Account 14715 had three suffix accounts: 001, 002, and 015. Account 14716 had two suffix accounts: 001 and 015. Meredith's and City Life's accounts are collectively referred to as "the accounts."

On July 8, 2013, Meredith pledged the funds in account 10126-001 to secure a loan from the credit union. The loan was refinanced four months

later. On November 5, 2013, she pledged funds in her account 10126-001 and in City Life's account 14715-002 to secure a loan for $64,399.59.

Jeremy Landau was one of City Life's investors. In July of 2013, he wired $250,000 into the accounts.

James David Smith was the manager and chief executive officer of the credit union in February of 2014. He has known Meredith for most of her life. Smith described the credit union as small, having only $40 million in assets. Meredith was personally known to the other employees at the credit union.

Fred McCoy was the credit union's accountant in February of 2014. He has been its chief executive officer since October of 2015.

On February 4, 2014, someone identifying himself as Loren Dawson, an investigator for the District Attorney of Orange County, California, called McCoy. Dawson told McCoy that they were conducting an investigation in Orange County and he wanted to obtain some records of a credit union member. The member was not identified. Dawson said they would send over a search warrant.

On February 5, 2014, a search warrant was faxed from Dawson to McCoy at the credit union. It ordered the production of records in the name of City Life, a City Life account, Meredith, and any account in which Meredith is an authorized signer thereof.

McCoy brought the warrant to Smith. Smith asked McCoy to call Dawson and obtain some clarification about what was being sought by Dawson. According to Smith, no action was taken on this warrant.

2

The same day that the warrant was received, McCoy found online the phone number for the office of the Orange County District Attorney, called it, and asked to speak to Dawson. When he was connected to Dawson, McCoy told Dawson that he had shown the warrant to his manager, who had some questions and wanted to know more information about the situation. Dawson said that a school board member had stolen $250,000, and that they had traced the money to a credit union account. McCoy conveyed that information to Smith. The warrant was provided to David White, the attorney for the credit union.

On February 9, 2014, a second search warrant was faxed to the credit union. Because that date was a Sunday, the credit union did not see the second warrant until the next day. This warrant commanded the credit union to seize all moneys in accounts 14715, 14716, and 10126. The warrant stated that the funds could be seized by agreement and consent if the credit union held the accounts in suspension and did not allow any transactions relating to the accounts without an order from the California court.

After discussing the matter with McCoy, Smith contacted White. Smith made the decision to freeze Meredith's and City Life's accounts and to place her loan in default.

The administrative freeze was placed on February 10, 2014. On that same date, the credit union removed $38,452.08 from Meredith's account 10126-001 and $24,458.28 from City Life's account 14715-002. McCoy could not recall the order in which the actions were done, but emphasized the freeze and the loan acceleration were entirely separate actions.

Meredith first learned the accounts were frozen on February 11 when she tried to use the ATM and learned that she had a zero balance. Upon entering the credit union, she asked to speak with Smith, who told her that the credit union had placed a freeze on the accounts. Smith eventually gave her the search warrant documents. He also told Meredith that she probably needed to get an attorney.

Meredith claimed that Smith told her they were copying City Life's and her financial records and information in response to the search warrants. She asked Smith not to turn over the records. Smith denied that he ordered copies of the record to be made in response to the warrants.

Meredith conferred with two out-of-state attorneys who had advised her in business matters. On their advice, she hired a local attorney on February 20.

On February 21, 2014, City Life and Meredith filed a motion in the First Judicial District Court of Caddo Parish for a temporary restraining order, preliminary injunction, permanent injunction, and immediate release of frozen funds.

On February 24, 2014, the district court signed an order that the temporary restraining order be issued and that the credit union immediately release the funds in accounts 14715, 14716, and 10126 to the plaintiffs. The credit union was ordered to show cause on March 24 why a preliminary injunction should not be issued.

The credit union immediately lifted the freeze on the accounts, which had continued to earn interest during the freeze. When Meredith attempted

4

to make a loan payment, she learned that her loan had been satisfied through the pledged funds.

On February 24, 2014, Meredith removed nearly all remaining funds from her accounts at the credit union. For instance, $58,000 was withdrawn from City Life's account 14715-015.

The Orange County District Attorney's Office did not contact the credit union again after the second warrant. It did not know about the administrative freeze placed by the credit union.

On February 28, 2014, the credit union was served with a grand jury subpoena from the federal court for the Western District of Louisiana seeking any documents related to City Life, Meredith, and one of her employees. The credit union provided documents pursuant to the subpoena.

## PROCEDURAL HISTORY

Meredith claimed that because the accounts were frozen, she was unable to pay for City Life's day-to-day operations and payroll, she could not process payments from customers, and she had to cancel a planned trip to Sierra Leone to purchase diamonds.

On February 4, 2015, City Life and Meredith filed suit against the credit union. They sought damages for the disclosure of financial data, information, documents, and records to third persons, as well as for the seizure, distraint, and conversion of its assets, funds, and monies. Notably, they claimed that the credit union's actions prevented them from financing or closing a transaction involving raw diamonds that would have resulted in a profit of $1,050,000.

On January 17, 2017, the credit union raised the exception of no right of action as to the claim for lost profits. The credit union argued that because the plaintiffs admitted they were not parties to the diamond transaction, they had no interest in any lost profits from the transaction.

The trial court sustained the exception of no right of action and ordered the plaintiffs to supplement or amend their petition to set out a right of action against the credit union for the recovery of damages which were sustained due to their inability to finance, close, and carry out their contracts related to the diamond purchase.

On May 3, 2017, the plaintiffs filed a first supplemental and amended petition. Ros DiMere, Inc. ("RDI") was added as a plaintiff. They alleged that RDI was created for the sole purpose of acting as their agent in connection with the diamond transaction.

On November 14, 2017, the credit union filed the exceptions of no cause of action and prescription. The credit union argued that because RDI did not allege that it held an account or entered into a written agreement with the credit union, it could not state a cause of action for breach of fiduciary duty or tortious interference with contract, and even if RDI could, those claims had prescribed.

On February 9, 2018, the credit union filed a motion for partial summary judgment seeking the dismissal of the plaintiffs' claims for lost profit damages.

On April 14, 2018, the court rendered judgment sustaining the exception of prescription and dismissing with prejudice all claims asserted by RDI. The exception of no cause of action was declared moot. On that

same date, the trial court rendered a judgment granting the motion for partial summary judgment and dismissing with prejudice all lost profit claims by City Life, Meredith, and RDI.

The plaintiffs appealed the judgment granting the partial summary judgment. RDI also appealed the judgment sustaining the exception of prescription. This court affirmed the judgment sustaining the exception of prescription and dismissing all of RDI's claims, but dismissed the appeal of the partial summary judgment as interlocutory. C*ity Life Live, L.L.C. v. Post Office Emp. Fed. Credit Union*, 52,616 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1251, *writ denied*, 19-00751 (La. 9/17/19), 279 So. 3d 376.

On September 23, 2020, the credit union filed a motion for summary judgment to dismiss the remaining claims of Meredith and City Life. On June 17, 2021, the trial court granted a partial summary judgment as to the claims concerning the credit union's acceleration of the loan and repayment of the loan with funds from the plaintiffs' accounts. The motion for summary judgment was denied as to the claims for improper disclosure of the plaintiffs' financial data and as to the claims that the credit union improperly maintained an administrative freeze after repayment of the loan.

On June 28, 2021, the credit union filed a motion in limine to exclude evidence related to the purported lost profit claim which had been dismissed previously on a motion for partial summary judgment. The credit union maintained that the only remaining claims were those related to whether the credit union improperly produced any of the plaintiffs' financial information and whether the credit union improperly froze the accounts.

7

On July 26, 2021, the court rendered judgment granting the motion in limine to exclude evidence of dismissed claims. No evidence related to the lost profit claims could be admitted at trial.

On November 12, 2021, the credit union raised the exception of prescription as to the claim of an alleged violation of the Federal Right to Financial Privacy Act. On January 7, 2022, the trial court rendered judgment sustaining the exception of prescription and dismissing plaintiffs' claims for damages and attorney fees under that Act.

***Trial***

A bench trial was conducted over three days in March of 2022. The court heard testimony from Meredith's attorney on the TRO, Meredith, her grandfather, her mother, Smith, and McCoy.

After the plaintiffs rested, the credit union moved for an involuntary dismissal on the claim of improper disclosure of their financial documents, namely that it violated La. R.S. 6:333. The court granted the motion because the uncontroverted evidence was that no records were produced pursuant to either search warrant.

The credit union next moved for an involuntary dismissal on the claim for attorney fees under the Louisiana Unfair Trade Practices Act ("LUTPA") on the grounds that LUTPA does not apply to a federally insured financial institution. The motion was granted.

The credit union also moved for an involuntary dismissal as to the claim for loss of business reputation, the claim that the freeze of the accounts was improper, and the damages claim for interest on a loan taken out by Meredith's grandparents. Those motions were denied.

Judgment in favor of the credit union was rendered on September 2, 2022.  In its written reasons for the judgment, the court concluded that the freeze was not an act of conversion or a wrongful seizure.

The court noted that the plaintiffs' possessory rights over their accounts were limited by the credit union's membership agreement.  The court found that "legal process" as stated in Section 17 of the membership agreement should be read to include "any legal action" brought against the plaintiffs' accounts.  Further, the credit union's right under Section 21 of the membership agreement to refuse any payout until a dispute is resolved included the right to place a temporary freeze on those funds.  Thus, when the accounts were made the subject of the two search warrants, the credit union had the right under Section 17 to refuse to complete transactions involving the plaintiffs' accounts without incurring liability.

The trial court also found that given the suspicious circumstances, the credit union acted reasonably in freezing the accounts.  Those suspicious circumstances were the large deposit from an investor, Smith's unease when meeting one of Meredith's employees, the phone call from Dawson about a pending investigation, the first search warrant, Dawson telling McCoy that the investigation involved the theft of $250,000 by a school board member and that the funds had been traced to the plaintiffs' accounts, and the second search warrant requesting seizure of all funds in the identified accounts.  Smith was reasonable to conclude that placing a temporary hold over the accounts was necessary to protect the credit union's own interests, the interests of the members, and the interests of justice.

*Posttrial proceedings*

On August 9, 2022, plaintiffs' counsel filed a motion to withdraw after he received a letter from the plaintiffs terminating his service and directing him to file a motion to withdraw. The motion was granted on August 10.

On August 26, 2022, the plaintiffs filed motion for leave to proceed in proper person and for an additional period to supplement the proposed judgment.

On September 15, 2022, the plaintiffs filed a motion for new trial. The plaintiffs also filed a motion for leave of court to supplement the trial record with material information in advance of a hearing on the motion for new trial.

At a hearing on November 7, 2022, the trial court denied a motion to continue and the motion for new trial.

On November 16, 2022, the trial court rendered judgment denying the plaintiffs' motion for an additional period to supplement the judgment. The trial court also rendered judgment denying the plaintiffs' motion for new trial.

*Appeal*

Meredith and City Life gave notice of appeal on December 6, 2022. Meredith has undertaken this appeal in proper person, representing herself and City Life. Meredith asserts that she is the "sole proprietor" of City Life. As a general rule, corporate entities must be represented by counsel. *D.W. Thomas & Son, Inc. v. Gregory*, 50,878 (La. App. 2 Cir. 11/23/16), 210 So. 3d 825. Even where a limited liability company has a sole shareholder, it is

an entity separate and distinct from that shareholder in terms of procedural capacity. *Id.*

In light of the fact that City Life's and Meredith's claims are intertwined, we will consider all arguments raised by appellants despite Meredith attempting to represent City Life on appeal.

Meredith's and City Life's brief contains 15 assignments of error and 8 issues of law. There is a considerable lack of clarity in the assignments of error and issues of law in the brief. We will address their arguments as stated in the argument section of the brief.

We also note that in general, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. *Martin v. Martin*, 52,401 (La. App. 2 Cir. 11/14/18), 261 So. 3d 984.

## DISCUSSION

*Administrative freeze*

Meredith and City Life contend the trial court was manifestly erroneous in rendering judgment in favor of the credit union. In its written reasons for judgment, the trial court concluded that the freeze was not an act of conversion or a wrongful seizure.

To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993). Even if an appellate court may feel its own evaluations and

11

inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole v. State Dept. of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

We find no manifest error in the court's finding that the freeze was not an act of conversion or a wrongful seizure. First and foremost, the evidence presented at trial showed a clear basis for the credit union to place the administrative freeze

Smith testified that his authority to seize the accounts came from the membership agreement that was signed when the accounts were opened. Smith testified that it was his understanding that he had the authority to place the freeze from Section 17, which refers to account funds subject to legal process or other claim.

Meredith signed a member account agreement with the credit union when she opened her account on April 22, 1998. She had checking and savings accounts. Meredith acknowledged that by signing the membership agreement, she agreed to the bylaws of the credit union and applicable account terms and conditions.

Smith testified that the membership agreement is a standard document furnished by the National Credit Union Association. It was part of his job responsibility to understand what the terms and conditions of the agreement meant.

Under Section 17 ("Credit Union Liability") of the agreement, it states that the credit union will not be liable for losses or damages for not properly

completing a transaction when account funds are subject to "legal process or other claim." The agreement further states in Section 21 ("Legal Process") that the credit union may refuse any payout until the dispute is resolved if any legal action is brought against the account.

Smith thought "legal process" meant an investigation by a legal authority. In Smith's view, legal process in this instance meant there was an investigation going on. When asked if any of Meredith's or City Life's accounts were subject to legal process in February of 2014, Smith stated they were under investigation. Smith also testified that when he learned that the funds in the accounts may have been stolen, he considered that to be a dispute as to the ownership of those claims, so there was "an other" claim as contemplated by Section 17.

McCoy testified that his understanding was that the investigation into the accounts was either a legal process or other claim as to the accounts. He believed that "legal process" meant any possibility of legal process. He thought the accounts were subject to legal process in February of 2014, and the search warrants would have been the legal process.

Not only were the credit union's actions permissible, but they were also reasonable. Smith testified the $250,000 wire transfer caught his attention as a six-figure deposit by a customer would be unusual for a credit union of their size. While the deposit did not make Smith suspicious of Meredith, he did find it unusual. Smith had never seen Meredith make a deposit that large.

Smith described how Meredith brought Tony Ross, who is from California, to the credit union in late 2013 to introduce him. Smith's

"antennas went up" when he met Ross, who gave Smith an uneasy feeling. Ross worked for City Life from 2013 to 2015. Meredith testified that Ross told her about his criminal history when she hired him.

McCoy testified that his understanding after the second phone call was that Dawson was investigating money improperly taken from a school board and that been traced to one of the credit union accounts. He conveyed that information to Smith.

Based on McCoy's conversation with Dawson, Smith knew funds wired into the account had been traced back to California. Smith noticed that there were boxes checked on the warrants stating that there was probable cause to believe that property had been stolen or embezzled.

Smith thought placing the freeze was in the best interest of the credit union because he and McCoy had confirmed that Dawson worked for the Orange County District Attorney, they had more information about the wire transfer and the nature of it, and the matter had been discussed with the credit union's attorney.

Smith had a responsibility to protect the assets of the credit union. The credit union's potential liability was paramount in his decision to place the freeze because the credit union could have been held liable to the true owner of the funds if it allowed the release of those funds.

Meredith and City Life further argue that the admission of evidence originating from what they consider to be an unlawful warrant constituted manifest error. This argument ignores the evidence that the decision to implement the freeze was not premised solely on the warrants.

14

*Acceleration of loan repayment*

The trial court earlier granted a partial summary judgment as to the claims relating to the credit union's acceleration of the loan and repayment of the loan with funds from plaintiffs' accounts.

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880.

The loan agreement stated that Meredith would be considered in default if "something happens that we believe may seriously affect your ability to repay what you owe under this Agreement[.]" It further provided that once in default, the credit union can require "immediate payment" of the entire unpaid balance, and the right to receive notice of demand for immediate payment was waived.

The security agreement stated, "You will be in default if . . . anything else happens that significantly affects the value of the property or our security interest in it." It further provided that the borrower will also be in default under the security agreement if the loan is in default.

Submitted in support of the motion was an affidavit from Smith in which he stated that the potential seizure of the funds could affect Meredith's ability to repay the loan and diminish the value of the credit union's security interest. The credit union acted within its rights under the loan and security agreements when it placed Meredith's loan in default and

15

repaid the loan through account funds pledged as security for the loan. Summary judgment on this claim was properly granted.

### *Lost profit claims*

The trial court granted a partial summary judgment which dismissed all lost profit claims by Meredith, City Life, and RDI. This court dismissed the appeal of that partial judgment on the grounds that it was interlocutory. *City Life Live, L.L.C. v. Post Office Emp. Fed. Credit Union*, *supra*.

The trial court did not err in granting this motion for partial summary judgment. There was no genuine issue of material fact that any lost profit claim belonged solely to RDI. The credit union had no contractual relationship with RDI and owed no duty to it. In addition, in the earlier appeal, this court affirmed the judgment sustaining the exception of prescription and dismissing all of RDI's claims. That judgment became final when the Louisiana Supreme Court denied a writ in the matter. We also note that the earlier ruling is supported by the later finding that the freeze was not an act of conversion or a wrongful seizure.

### *Federal Right to Financial Privacy Act*

On November 12, 2021, the credit union raised the exception of prescription as to the claim of an alleged violation of the Federal Right to Financial Privacy Act ("Act"). The credit union argued that in her 2016 deposition, Meredith testified that she believed the credit union has violated the Act, yet it was not until July of 2021 that Meredith and City Life first asserted a claim for such damages when they provided defense counsel with their pretrial exhibit inserts. The trial court rendered judgment sustaining

the exception of prescription and dismissed plaintiffs' claims for damages and attorney fees under the Act.

Any claim that Meredith and City Life was attempting to assert pursuant to the Act was clearly untimely. We find no error in the judgment sustaining the exception of prescription.

*Motions for involuntary dismissal*

The trial court granted an involuntary dismissal regarding the claim of improper disclosure of financial documents, namely that the credit union violated La. R.S. 6:333, which prohibits a bank's disclosure of a customer's financial records except under limited circumstances. The court concluded the motion was warranted because the uncontroverted evidence was that there were no records produced pursuant to either search warrant.

Meredith testified that when she told Smith not to produce her records pursuant to the search warrants, he responded they were following the advice of counsel and did not know what they were going to do. She later testified that he said they were going to turn them over. However, she also testified that she has no knowledge of anyone other than the FBI having her documents from the credit union.

Smith denied producing any records pursuant to the search warrants. Smith testified that he did not know how Meredith could believe they were copying her or City Life's financial information pursuant to the warrant because he did not tell her that, and the copy machine is located in a different area of the credit union from the lobby.

McCoy testified that he took no steps to copy any of Meredith's or City Life's records in response to either warrant, nor to his knowledge did

anyone else. McCoy testified that to his knowledge, the credit union never produced or delivered Meredith's or City Life's financial records and information to anyone in connection with either warrant. The only documents produced to a third-party were in response to the federal grand jury subpoena.

The evidence at trial showed only that the documents were produced pursuant to the subpoena from the federal grand jury. La. R.S. 6:333(F)(13) specifically allows a bank's disclosure of financial records "pursuant to a subpoena or court order issued in connection with proceedings before a federal or state grand jury [.]"

We also note that the disclosure of the record did not violate the Federal Right to Financial Privacy Act. 12 U.S.C.A. § 3413(i) states:

> Nothing in this chapter (except sections 3415 and 3420 of this title) shall apply to any subpoena or court order issued in connection with proceedings before a grand jury, except that a court shall have authority to order a financial institution, on which a grand jury subpoena for customer records has been served, not to notify the customer of the existence of the subpoena or information that has been furnished to the grand jury, under the circumstances and for the period specified and pursuant to the procedures established in section 3409 of this title.

The court also granted an involuntary dismissal as to the claim for attorney fees under LUTPA on the grounds that LUTPA does not apply to a federally insured financial institution.

La. R.S. 51:1406(1) states that LUTPA does not apply to "[a]ny federally insured financial institution[.]" Smith testified that the credit union is a federally chartered credit union. McCoy testified that the credit union is a federally insured financial institution, and was so in 2014. It is insured by the National Credit Union Association ("NCUA"). McCoy thought it was

fair to say the NCUA is like the Federal Deposit Insurance Corporation for banks, but that the NCUA is for credit unions.

A motion for involuntary dismissal is allowed at the close of the plaintiff's evidence in a bench trial. The movant requests dismissal of the action on the grounds that, based on the facts and law, the plaintiff has failed to show a right to relief. La. C.C.P. art. 1672(B); *Brodnax v. Foster*, 47,079 (La. App. 2 Cir. 4/11/12), 92 So. 3d 427, *writ denied*, 12-1074 (La. 9/12/12), 98 So. 3d 310. A dismissal based on La. C.C.P. art. 1672(B) should not be reversed in the absence of manifest error or unless clearly wrong. *Brodnax v. Foster*, *supra*.

Based on our review of the evidence presented at trial, the trial court was not clearly wrong or manifestly erroneous in granting either involuntary dismissal.

### *Denial of motion to continue hearing on motion for new trial*

Appellants complain the district court abused its discretion when it denied their motion to continue the motion for new trial hearing while they awaited results of a subpoena duces tecum that had been issued to the Orange County court.

La. C.C.P. art. 1972(2) states that a new trial shall be granted "[w]hen the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial." Appellants argue that evidence of the legality of the search warrant is the type of evidence contemplated by art. 1972(2).

The trial court did not abuse its discretion in denying the motion to continue the hearing. The lawsuit was filed in 2015 and was not tried until

2022.  The warrants faxed to the credit union from California played a role in the events leading up to the credit union taking action in this matter. Meredith and City Life had plenty of time before trial to obtain whatever evidence that they sought from the court in California.

***Smith's testimony concerning Meredith's credit score***

Appellants argue the trial court abused its discretion in permitting Smith to give special testimony over its objections without first establishing his qualifications.  Presumably this is directed at Smith's testimony about Meredith's credit score as appellants argue in their brief that Smith did not know what certain credit ratings meant.  Smith was well qualified to testify regarding banking matters.  Even if appellants' contention is also directed at other testimony by Smith, including his meeting Ross, the actions that Meredith took in the accounts, and the credit union membership agreement, we find their contention is without merit.  There was no abuse of the trial court's discretion.

***La. R.S. 6:649.1***

Appellants maintain that the trial court failed to apply La. R.S. 6:649.1, which states in Subparagraph A:

> Credit union officers and directors shall be deemed to stand in a fiduciary relationship to their credit union and its members and shall discharge the duties of their respective positions in good faith and with the diligence, care, judgment, and skill[.]

She argues that Smith failed to fulfill his duty to protect her interest.

There is no merit to this argument as there is no evidence to support this claim.  As explained earlier in this opinion, the credit union acted within its rights as set forth in the membership agreement.

20

*Additional duties*

Appellants contend that Smith had contractual and fiduciary duties to investigate the warrants before executing a warrant not authorized under Louisiana law. They further contend the seizure was done with an illegal warrant.

No funds were seized as the ownership of the funds remained in Meredith's possession while the freeze was imposed. In fact, the funds continued to earn interest. Additionally, the warrants were not the sole basis for the freeze. Appellants' contentions have no merit.

*Unlawful search and seizure*

Appellants next argue that the search and seizure of the accounts was *prima facie* evidence that the credit union violated its fiduciary duty to them. As discussed earlier, the credit union acted within its rights pursuant to the membership agreement. Moreover, Smith considered more than the warrants when deciding to impose the freeze.

Appellants also assert that not only did the credit union search and seize their funds, but also copied their personal and business files and distributed the information to third parties. This claim was discussed earlier in reference to the involuntary dismissals.

*Bad faith & Fair Debt Collection Practices Act*

Meredith and City Life argue that the credit union acted in bad faith when it made an unlawful conversion of their funds before imposing the freeze. They further argue that the credit union violated the Fair Debt Collection Practices Act when it used the search warrant as authority to pay off the loan before freezing the accounts.

McCoy testified that he was not certain which occurred first, the freeze or placing the loan in default. Regardless, there was no unlawful conversion. The credit union acted within its rights as spelled out in the loan and security agreements when it placed Meredith's loan in default, accelerated the loan repayment, and satisfied the outstanding loan balance against the funds pledged to secure the loan obligation.

*Admission of warrants into evidence*

Meredith and City Life conclude the argument portion of their brief by maintaining that the trial court committed manifest error when it admitted the warrants into evidence.

A district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal absent an abuse of that discretion. *Dodson v. Master Lube Express Inc.*, 54,805 (La. App. 2 Cir. 11/16/22), 352 So. 3d 113. Based on this record, we find no abuse of the trial court's great discretion. Furthermore, we note that the warrants were also admitted into evidence as plaintiffs' exhibits 23 and 24.

## CONCLUSION

For the foregoing reasons, we affirm the judgment dismissing the claims of Meredith and City Life as well as all court rulings subsequent to the rendition of the final judgment. Appeal costs are assessed to Meredith and City Life.

**AFFIRMED**.